**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **LAQUANDA WALKER,** ) | **CASE NO. 4:07 CV 2812** |
| ) | |
| ) | **JUDGE PETER C. ECONOMUS** |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| **V.** ) | |
| ) | **MEMORANDUM OPINION** |
| **MAHONING COUNTY, et al.,** ) | **AND ORDER** |
| ) | |
| ) | |
| ) | |
| **DEFENDANTS.** ) | |

This matter is before the Court upon Motions for Judgment on the Pleadings filed by Defendants Neil Kennedy Recovery Center ("NKRC"), Joseph Morell ("Morell"), and the Mahoning County Operators of the Mahoning County Juvenile Justice Center ("Mahoning County"). (collectively, "Defendants"). (Dkt. #s 26 and 32). Also before the Court is Plaintiff's Response (Dkt. # 35), and Defendants NKRC and Morell's Reply. (Dkt. # 36). For the following reasons, the Motions are **DENIED**.

**I. BACKGROUND**

Plaintiff Laquanda Walker is the Administratrix of the estate of Roosevelt Walker, a minor at the time of his death. (Dkt. # 28 at ¶ 5). According to Plaintiff, on September 17, 2005, Roosevelt Walker and other juveniles from the Mahoning Country Juvenile Justice Center were "under the direct care and supervision" of Defendant Mahoning County during a field trip at Wolf Run State Park. (Dkt. # 28 at ¶ 14). Plaintiff alleges that Defendants NKRC and Morell were

contracted by Defendant Mahoning County, and their actions were "attributable to Mahoning County." (Dkt. # 28 at ¶ 36). Plaintiff alleges a group consisting of Walker and other juveniles walked to a lake on the Wolf Run property "unsupervised and unaccompanied by any employee or agent of the Defendants." (Dkt. # 28 at ¶ 15). The group began to swim in the lake, and Walker drowned after experiencing trouble returning to the shore. (Dkt. # 28 at ¶¶ 16-17).

Specifically, Plaintiff claims that Defendants "failed to train those responsible for care and supervision" of decedent, and failed to warn and protect decedent from the "inherent risks surrounding a rural environment." (Dkt. # 28 at ¶¶ 19 and 38). The Complaint also contains claims of negligent and/or reckless supervision, wrongful death, in addition to a survival action. (Dkt. # 28).

Plaintiff filed the Complaint in the instant matter pursuant U.S.C. 42, §§ 1983 et. seq., and alleged § 1983 claims of deliberate indifference and loss of familial relations against all Defendants. (Dkt. # 28). Plaintiff also alleged that Defendants' willful, wanton, reckless and negligent supervision of Roosevelt Walker caused his death. (Dkt. # 28 at ¶ 1). NKRC and Morell filed the instant Motion for Judgment on the Pleadings on December 19, 2007, arguing that all of the Plaintiff's claims are barred because the Plaintiff had executed a Release and Waiver of Liability. (Dkt. # 26). Before responding to the motions, Plaintiff filed a First Amended Complaint on February 20, 2008. (Dkt. # 28).[1] Mahoning County filed the instant Motion for Judgment on the Pleadings, and presented the same argument as NKRC and Morell; that the Release and Waiver of

---

[1] Plaintiff's First Amended Complaint (Dkt. # 28) offered no substantive changes to the original Complaint; only the caption was changed. (Dkt. # 1). Further, NKRC and Morell filed a Reply to the Plaintiff's Response after the Complaint the Amended Complaint was filed. (Dkt. # 35). The Reply addresses Plaintiff's arguments raised in the Response. Therefore, the court will consider Defendants' Motions for Judgment on the Pleadings as being filed against the Amended Complaint even though they were filed before the Complaint was amended. It would be redundant to require new motions to be filed for a Complaint that was not substantially altered.

Liability bars all of the Plaintiff's claims. (Dkt. # 32). Plaintiff filed a Response and Memorandum in Opposition. (Dkt. # 35). NKRC and Morell filed a Reply on March 24, 2008. (Dkt. 36).

In their Answers, the Defendants present a document titled "Waiver of Liability." ("Release") (Dkt. #s 31 and 34). The Release forms the basis of the Motions for Judgment on the Pleadings. Laquanda Roosevelt signed the Release one day prior to the field trip on September 16, 2007. (Dkt. # 36 at Exhibit A). The Release contains language that discharges and releases The Mahoning County Juvenile Court and "anyone associated with" the Juvenile Court from liability pursuant to the September 17, 2007 field trip. (Dkt. # 36 at Exhibit A). Defendants argue that the Release is valid under both state and federal law, and therefore bars Plaintiff's claims. (Dkt. #s 26 and 32). Plaintiff argues that the Release is invalid. (Dkt. # 35).

## II. STANDARD OF REVIEW

Rule 12(c) provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) if a movant clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Beal v. Missouri Pacific R.R., 312 U.S. 45 (1941). For purposes of this motion, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, while all contravening assertions in the movants' pleadings are taken as false. Given this standard, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478 (6th Cir. 1973).

**III. LAW AND ANALYSIS**

The only issue before the Court is whether Plaintiff's claims should be dismissed because the signed Release waives Defendants' liability.[2] (Dkt. #s 26 and 32). Defendants claim that under Ohio law, "[a] release of a cause for action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." Haller v. Borror Corp., 552 N.E.2d 207, 210 (Ohio 1990); citing Perry v. M. O'Neil & Co., 85 N.E. 41 (Ohio 1908). Defendants also cite federal cases that favor the enforcement of "properly executed" waivers. See Shaheen v. B.F. Goodrich Co., 873 F.2d 105 (6th Cir. 1989). Defendants contend that a release is unenforceable only when it is obtained by fraud, duress, mutual mistake, or when consideration received for the Release was returned. (Dkt. # 26 at 8). Plaintiff asserts five grounds on which the waiver is unenforceable: 1) the Release is unenforceable under federal law, 2) the Release does not insulate Defendants' conduct that was willful and wanton, 3) the Release's terms are not clear and unequivocal, 4) Defendants are not named in the Release, and 5) the Release does not apply to Plaintiff and other heirs of decedent Walker. (Dkt. # 35).

**1. Ability to Waive § 1983 Claims**

Plaintiff argues that the Release is unenforceable because LaQuanda Walker did not knowingly and voluntarily execute the document. (Dkt. # 35 at 11). Plaintiff alleges that her constitutional rights under the First and Fourteenth Amendments were violated due to the Defendants' deliberate indifference, which caused Roosvelt Walker's death and LaQuanda Walker's

---

[2] Generally, documents not referenced in the complaint are not appropriate to consider in a 12(b)(6) or 12(c) motion. See Weiner V. Klais and Co., 108 F.3d 86, 89 (6th Cir. 1997). However, in assessing a motion, a court can consider the complaint, *answer*, and *any written instruments which are attached as exhibits to those pleadings*. Benzon v. Morgan Stanley Distributors, Inc., 420 F.3d 598, 603 (6th Cir. 2005) (emphasis added). Defendants attached the Release as an exhibit to their Answers (Dkt. #s 31 and 34), and therefore, this Court can consider the Release.

loss of familial relationship. Pursuant to § 1983, a person can be liable for deprivations of constitutional rights. 42 U.S.C. § 1983, et. seq.

Courts closely scrutinize waivers of constitutional rights, and "indulge every reasonable presumption against a waiver." Aetna Ins. Co. v. Kennedy, 301 U.S. 389 (1937). A constitutional right may be waived if the agreement is, " 'voluntarily, intelligently, and knowingly' made." Fuentes v. Shelvin, 407 U.S. 67 at 94-95 (1972). Both parties must be aware of the significance of what exactly is being waived, and "[a] waiver of constitutional rights in any context must, at the very least, be clear." Id. at 95-96. Courts also employ this test when considering a potential waiver of § 1983 claims. See Town of Newton v. Rumery, 480 U.S. 386, 397-98 (1987); Morrison v. Warren, 375 F.3d 468, 474 (6th Cir. 2004) (holding that language waiving rights to assert 1983 claim must be "clear and unmistakable").

In this case, the Release contains only general language regarding what rights LaQuanda Walker was waiving. There is no language that constitutes a "clear and unmistakable" waiver of § 1983 rights. Therefore, in regard to Plaintiff's § 1983 claims, the Release is unenforceable.

**2. Ability to Waive State Law Claims**

Plaintiff argues that the Release does not apply in this case because Plaintiff is alleging that all Defendants' actions were "willful and wanton." (Dkt. # 28 ¶¶ 1, 28, 34, 47). While Ohio law allows exculpatory agreements to protect a party from liability for its own negligence, these agreements do not protect to a tortfeasor who engages in willful or wanton misconduct. Bowen v. Kil-Kare, Inc., 585 N.E.2d 384, 390 (Ohio 1992); Sanfillipo v. Rarden, 493 N.E.2d 991, 995-996 (Ohio App. 10 Dist. 1985); Cain v. Cleveland Parachute Training Ctr., 457 N.E.2d 1185, 1186-1187 (Ohio App. 11 Dist. 1983).

Under Ohio law, willful misconduct is defined as, "conduct involving an intent, purpose or design to injure." McKinney v. Hartz & Restle Realtors, Inc., 510 N.E.2d 386, 388-389 (Ohio 1987), quoting Denzer v. Terpstra, 193 N.E. 647, paragraph two of the syllabus (Ohio 1934). Wanton misconduct is defined as conduct where one, "fails to exercise any care whatsoever toward those to whom he owes a duty of care, and [t]his failure occurs under circumstances in which there is a great probability that harm will result." McKinney, 510 N.E.2d at 388-399, quoting Hawkins v. Ivy, 363 N.E.2d 367, syllabus (Ohio 1977).

While the Amended Complaint does not allege Defendants' acted with "intent, purpose or design to injure" required for willful conduct, there are sufficient factual allegations to support the conclusion that the Defendants' actions amounted to wanton conduct. Plaintiff alleges decedent was under "the direct care and supervision" of the Defendants. (Dkt. # 28 at ¶ 14). Plaintiff also alleges that decedent, a minor, was left "unsupervised and unaccompanied by any employee or agent of the Defendants" at the time the decedent swam in a lake and drowned. (Dkt. # 28 at ¶ 15-17). Thus, Plaintiff has alleged facts sufficient to support a claim that Defendants' conduct was wanton.

Furthermore, under Ohio law, a waiver is unenforceable where, "[a] party to the contract seeking protection under the clause has failed to exercise any care whatsoever toward those to whom he owes a duty of care." Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co., 375 N.E.2d 410, 416 (Ohio 1978); see Thomas v. Atlantic Coast Line R. Co., 201 F.2d 167, 170 (5th Cir. 1953). Since Plaintiff alleges that Defendants' conduct was wanton—which requires the additional showing of a possibility of harm—their allegations also satisfy this standard. Therefore, to the extent that the Complaint alleges that Defendants failed to exercise a duty of care owed to Plaintiff,

the Release does not shield Defendants from liability, and the Court need not consider the remaining arguments.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Judgment on the Pleadings are **DENIED**.  (Dkt. # 26 and 32).

**IT IS SO ORDERED.**

**s/ Peter C. Economus –June 26, 2008**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**
