UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LAQUANDA WALKER,** | ) | **CASE NO. 4:07CV2812** |
| | ) | **JUDGE PETER C. ECONOMUS** |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **MAHONING COUNTY, et al.,** | ) | **AND ORDER** |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court upon Defendant Mahoning County Operators of the Mahoning County Juvenile Justice Center's ("Mahoning County") Second Motion for Judgment on the Pleadings ("instant Motion"). (Dkt. # 60). Also before the Court is Plaintiff Laquanda Walker's ("Walker") Response (Dkt. # 65) and Mahoning County's Reply (Dkt. # 67). For the following reasons, the instant Motion is **DENIED** in part and **GRANTED** in part.

**I. BACKGROUND**

Walker is the Administratrix of the estate of Roosevelt Walker, a minor at the time of his death. (Dkt. # 55 at ¶ 6). According to Walker, on September 17, 2005, Roosevelt Walker and other juveniles from the Mahoning County Juvenile Justice Center were "under the direct control, care and supervision" of Mahoning County during a field trip at Wolf Run State Park. (Dkt. # 55 at ¶ 11). Walker alleges that the group of juveniles walked to a lake on the Wolf Run property "unsupervised and unaccompanied by any

1

employee or agent of the Defendants." (Dkt. # 55 at ¶ 12). Walker further alleges that Mahoning County failed to provide any supervision while Roosevelt Walker and the other juveniles were in the water swimming. (Dkt. # 55 at ¶ 14). Roosevelt Walker drowned after experiencing trouble returning to the shore. (Dkt. # 55 at ¶ 15).

Walker brings the instant matter pursuant to U.S.C. 42, § 1983 *et. seq.*, and alleges claims of deliberate indifference and loss of familial relations against all Defendants. (Dkt. # 55). Walker also alleges that Mahoning County, acted "willful, wanton, recklessly in a gross and negligent manner, and with deliberate indifference to Roosevelt Walker's rights, privileges, and immunities failed to protect Roosevelt Walker from harm and failed to provide Roosevelt Walker with protective services." (Dkt. # 55 at ¶ 1). Furthermore, Walker alleges that the conduct of the Defendants caused his pain, suffering, and death. (Dkt. # 55 at ¶ 2).

On September 17, 2007, Walker filed the original Complaint in this matter. (Dkt. #1). On December 19, 2007, Defendants Neil Kennedy Recovery Clinic ("NKRC") and Joseph Morell ("Morell") filed a Motion for Judgment on the Pleadings asserting that all of Walker's claims are barred because Walker executed a release and waiver of liability. (Dkt. # 26). On February 27, 2008, Mahoning County filed their first Motion for Judgment on the Pleadings, presenting the same argument as NKRC and Morell. (Dkt. # 32). On June 26, 2006 this Court denied both Motions for Judgment on the Pleadings. (Dkt. # 37).

On March 12, 2009 Mahoning County filed the instant Motion, a second Motion for Judgment on the Pleadings, arguing that: 1) Mahoning County is entitled to Eleventh Amendment immunity; 2) Walker cannot maintain a 42 U.S.C. § 1983 claim; and 3) Mahoning County is immune from Walker's state law claims. (Dkt. # 60). On April 3, 2009, Walker filed a Response (Dkt. # 65) and on April 20, 2009, Mahoning County filed a Reply (Dkt. # 67).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The Court reviews a Fed. R. Civ. 12(c) motion for judgment on the pleadings as it would a motion to dismiss under Fed. R. Civ. 12(b)(6). Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). Judgment may be granted under Rule 12(c) if a movant clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Beal v. Missouri Pacific R.R., 312 U.S. 45, 51 (1941).

When considering whether a Rule 12(c) motion should be granted, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, while all contravening assertions in the movants' pleadings are taken as false. Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973). While the Court must accept a plaintiff's factual allegations as true, "[t]he trial court need not accept as true [a plaintiff's] legal conclusions." Lewis v. ACB Bus.

3

Servs., 135 F .3d 389, 406 (6th Cir. 1998). Given this standard, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. Id. The party making the motion is clearly entitled to judgment when no material issue of fact exists. Paskvan v. City of Cleveland Civil Serv. Comm'n, 946 F.2d 1233, 1235 (6th Cir. 1991). The Court may grant the motion for judgment on the pleadings only if "the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief." E.E.O.C v. J.H. Routh Packing Co., 246 F.3d 850, 851 (6th Cir. 2001).

### III. LAW AND ANALYSIS

**A. Eleventh Amendment Immunity**

Mahoning County contends that it is entitled to Eleventh Amendment immunity because the Mahoning County Juvenile Justice Center is an arm of the state and because Mahoning County is not responsible for the death of Roosevelt Walker. In response, Walker argues that the immunity afforded by the Eleventh Amendment does not extend to counties and similar corporations.

> The Eleventh Amendment of the United States Constitution provides:
>
> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

The Eleventh Amendment explicitly bars suits against the state commenced or prosecuted by citizens of another state. Id. The Supreme Court has held that Eleventh

Amendment sovereign immunity applies not only to states themselves, but also to those government entities that act as "arms of the State." S.J. v. Hamilton County, 374 F. 3d 416, 419-420 (6th Cir. 2004) (citing Regents of University if California v. Doe, 519 U.S. 425, 429 (1997)).

While an "arm of the state" includes some government entities, the term "state" does not include a political subdivision, and counties are political subdivisions of the state. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); See also Clay v. Edward J. Fisher, Jr., M.D., Inc., 588 F. Supp. 1363, 1365 (S.D. Ohio 1984). Sovereign immunity therefore does not extend to counties or municipal corporations. See Buckhannon Bd. and Care Home v. West Virgina Dep't of Health and Human Res., 532 U.S. 598, 609 n.10 (2001) (While states and state officers acting in their official capacity are generally immune from suit, a plaintiff may bring suit against a municipality and other political subdivisions of the state); Williams v. Stark County Bd. of Comm'rs, 2001 WL 302035, No. 994081 * 1 (6th Cir. March 23, 2001) ("Under Ohio law, …counties have distinct legal existence apart from the state such that Eleventh Amendment immunity does generally confer immunity against suit.").

Under Ohio law, a county juvenile detention center is generally considered part of the juvenile court, and thus, entitled to sovereign immunity. Oswald v. Lucas County, 2000 U.S. App. LEXIS 27990 *5 (6th Cir. 2000) (citing Mumford v. Basinski, 105 F.3d 264, 267 (6th Cir. 1997)). However, because *Mahoning County* is a political subdivision

5

and is not an arm of the state, it is not entitled to Eleventh Amendment immunity.[1] S.J., 374 F.3d 416, 420. Therefore, Walker's §1983 suit is not barred against Mahoning County for Eleventh Amendment purposes.

### B. Walker's 42 U.S.C. § 1983 Claims

Mahoning County contends that Walker cannot maintain a 42 U.S.C. §1983 action because Walker has not alleged and cannot prove that a policy of Mahoning County caused Roosevelt Walker to drown. Walker argues that her claim under 42 U.S.C § 1983 does not fail as a matter of law because a plaintiff is not required to plead a 42 U.S.C. § 1983 claim with particularity.

The standard applicable for a motion for judgment on the pleadings filed pursuant to Rule 12(c) is the same as a motion to dismiss under 12(b)(6). Grindstaff, 133 F.3d at 421. When determining whether to grant a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), the Court is required to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine

---

[1] While the pleadings in this case lend themselves to some confusion, this Court is persuaded that Mahoning County is the government entity named as a defendant in the instant action. Walker named Mahoning County as a defendant in the First and Second Amended Complaints. (Dkt. # 28, 55). Mahoning County refers to itself throughout the Answer to the Second Amended Complaint as "Defendant Mahoning County." (Dkt. # 56). Further, Mahoning County admitted in their Answer to the Walker's First and Second Amended complaint that Mahoning County "…is a political subdivision…" (Dkt. # 56 at ¶ 7). However, Mahoning County is not barred from raising the argument, and providing evidentiary support in a Motion for Summary Judgment, that: "Mahoning County does not operate or have control over the policies or procedures of the Mahoning County Juvenile Justice Center." (Dkt. # 67 at 2).

whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Id.; See also Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir. 1990).

Pursuant to Federal Rule of Civil Procedure 8(a), a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ. 8(a)(2). A plaintiff in a 42 U.S.C. § 1983 action, moreover, is not subject to a heightened standard of pleading. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993).

Section 1983 claims need not set forth in detail all the particularities of a plaintiff's claim against a defendant. Jones v. Duncan, 840 F.2d 359, 361 (6th Cir. 1988). To the contrary, the Federal Rules of Civil Procedure require only that the defendant be given fair notice of what the plaintiff's claim is and the grounds on which it rests. Leatherman, 507 U.S. 163 at 168 (1993) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). A plaintiff's legal theories are not required to be detailed as long as the relevant issues are sufficiently implicated in the pleadings. Smith v. City of Salem, 378 F.3d 566, 577 (6th Cir. 2004). The proper inquiry, rather, is whether relief is possible under any set of facts that could be established consistent with the allegation. Id.

In the instant case, Walker has sufficiently alleged that a policy of Mahoning County caused Roosevelt Walker to drown. Walker has alleged enough facts to proceed on theories of: 1) failure to provide adequate staff; and 2) failure to train.

7

**1. Failure to Provide Adequate Staff**

Generally, a 42 U.S.C. §1983 claim requires: 1) a deprivation of a right secured by the constitution; and 2) that the deprivation was caused by a person acting under the color of state law. See e.g., Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995). In other words, liability is imposed upon a government that, under color of some official policy, causes an employee to violate another's constitutional rights. International Union v. Bear Archery, 617 F.2d 157, 159 (6th Cir. 1980).

Municipalities can be sued directly under §1983 where the action of the municipality itself can be said to have caused the alleged harm. Monell v. Department of Social Services, 436 U.S. 658, 690 (1978). ("Local governing bodies…can be sued directly under §1983…where…the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). Although a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents, the government as an entity can be responsible under § 1983 when the execution of a government's policy or custom inflicts the injury. Molton v. Cleveland, 839 F.2d 240, 244 (6th Cir. 1988). This responsibility holds regardless of "whether the policy is made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 244 (quoting Monell, 436 U.S. 658 at 694).

Moreover, a municipality or government may be sued for deprivations caused pursuant to a governmental custom even though such custom has not received formal

8

approval. Monell, 436 U.S 658. at 690-691. Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994) ("…there need not be a formal policy for there to be an unconstitutional custom that amounts to a policy.").

In the instant case, Mahoning County argues that "…even if the claims against Mahoning County are proper, no policy or procedure of Mahoning County was the cause of the decedent entering into the lake." (Dkt. # 67 at 3). However, Walker has alleged that a policy or custom of Mahoning County led to Roosevelt Walker's death. Specifically, Walker alleges that the Mahoning County "…had a policy, custom, or practice of failing to provide an adequate number of competent agents or employees to supervise juveniles…" (Dkt. # 55 at ¶ 18). Walker further alleges that as a result of Mahoning County's policy, Roosevelt Walker "…suffered injuries which caused his death, and as a result, a violation of his Civil rights…[depriving him] of his rights, privileges, and immunities secured by the Constitution of the unites States…" (Dkt. # 55 at ¶ 21).

Based on these allegations, Walker has met the pleading requirements under Federal Rule of Civil Procedure 8(a). When the facts alleged in the Second Amended Complaint are construed in the light most favorable to Walker, Mahoning County has not shown that Walker "can prove no set of facts in support of the claims that would entitle relief," pursuant to Federal Rule of Procedure 12(c). Therefore, Walker's claim under 42 U.S.C §1983 for failure to provide adequate staff does not fail as a matter of law.

### 2. Failure to Train

The inadequacy of a training policy may serve as the basis for §1983 liability upon a political subdivision when the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact. Berry, 25 F .3d at 1345; City of Canton v. Harris, 489 U.S. 378, 388 (1989). A plaintiff is required to plead the following to make an adequate § 1983 claim for failure to train: 1) that the training program is inadequate to the tasks that the municipal officer must perform; 2) that the inadequacy is the result of the city's deliberate indifference; and 3) that the inadequacy is closely related to or actually caused the plaintiff's injury. Berry, 25 F.3d at 1345.

Mahoning County contends that: "…there is absolutely no evidence that Mr. Walker suffered constitutional deprivations by reason of custom or policy of Mahoning County JJC concerning its training and supervision of its employees." (Dkt. # 60 at 6). However, Walker's Second Amended Complaint alleges that Mahoning County had a policy, custom, or practice of failing to adequately train its agents or employees, and that "this failure led to and caused the death of Roosevelt Walker." (Dkt. # 55 at ¶¶ 11-19). Walker further alleges that Mahoning County's training program is inadequate to the tasks that the municipal officer must perform. Specifically, Walker alleges that Mahoning County by and through its agents and employees, "…failed to adequately train its agents and employees to perform the tasks referred to in [the] Complaint…failed to properly provide an adequate number of agents and employees to properly supervise Mr.

Walker, failed to properly train those responsible for the care and supervision of Walker and failed to properly warn and protect Roosevelt Walker…" ( Dkt. # 55 at ¶¶ 16-21).

In addition, Walker alleges that Mahoning County's inadequacies are the result of Mahoning County's deliberate indifference. (Dkt. # 55). Specifically, Walker alleges: "the aforementioned inadequacies of the Defendant are a result of deliberate indifference on the part of the Defendant." (Dkt. # 55 at ¶ 20).

Finally, Walker alleges that Mahoning County's inadequacies caused Roosevelt Walker's injury. (Dkt. # 55). The Second Amended Complaint states:

> As a direct and proximate and foreseeable result of the misconduct of Defendant, Mahoning County…Roosevelt Walker suffered injuries which caused his death and a violation of his civil rights. The employees and agents of the Defendant Mahoning County, through their actions and inactions deprived Roosevelt Walker of the rights, privileges and immunities secured the Constitution of the United States thereby causing Roosevelt Walker's death.

(Dkt. # 55 at ¶ 21).

When construed in the light most favorable to Walker, the Second Amended Complaint sufficiently sets forth the requisite allegations. Mahoning County has fair notice of what the claims are and the grounds upon which the claims rest. Walker has alleged that: 1) Mahoning County's training program was inadequate; 2) this inadequacy is the result of Mahoning County's deliberate indifference; and 3) the inadequacy caused the death of Roosevelt Walker. Because Walker has met all three requirements under Berry, Walker's §1983 claim for failure to train does not fail as a matter of law.

**C. Immunity from State Law Claims**

Mahoning County contends that it is entitled to immunity under Ohio's Political Subdivision Tort Liability Act. Ohio Rev. Code § 2744 *et seq.*, Under Ohio law, a political subdivision is generally not liable for state tort damages in a civil action for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or propriety function of the political division. Ohio Rev. Code § 2744.02(A)(1). A county is entitled to this type of immunity because the meaning of the term "political subdivision" includes a county. Ohio Rev. Code § 2744.01(F).

Ohio Revised Code § 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. Cater v. City of Cleveland, 83 Ohio St. 3d 24, 28 (1998). To complete the analysis, a Court must: 1) establish whether or not immunity exists under Ohio Revised Code § 2744.02(A)(1); 2) analyze whether any of the exceptions to immunity under Ohio Revised Code § 2744.02(B) apply; and 3) if an exception applies, the political subdivision has the burden of showing that a defense listed in Ohio Revised Code §2744.03 applies. Id. at 29. If immunity is established and no exception exists, the political subdivision has immunity from state law claims. Id.

In the instant case, Mahoning County is immune from Walker's state law claims. First, Mahoning County is a political subdivision duly organized under the laws of the state of Ohio. (Dkt. # 56 at ¶ 7). Because a political division includes a county, Mahoning County is generally immune from damages for civil labiality under Ohio Revised Code § 2744.02(A)(1).

Second, none of the exceptions listed in Ohio Revised Code § 2744.02(B) are applicable to Mahoning County in this case. Walker contends that Ohio Revised Code § 2744.02(B)(4) applies. (Dkt. # 65 at 8). Ohio Revised Code § 2744.02(B)(4) states in pertinent part:

> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> …
>
> (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

Ohio Rev. Code § 2744.02(B)(4).

However, Walker has not alleged in the Second Amended Complaint how Roosevelt Walker's death was the result of an incident that occurred "…within or on the grounds of, *and is due to physical defects within or on the grounds of*, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses." Ohio Rev. Code § 2744.02(B)(4) (emphasis added). Nowhere in the Second Amended Complaint has Walker alleged a defect within or on the grounds of the Wolf Run State Park. Nor has Walker alleged that Mahoning County was responsible for these defects.

13

Because none of the exceptions to immunity listed in Ohio Revised Code § 2744.02(B) are applicable in the instant case, no further analysis is necessary, and Mahoning County is entitled to immunity from Walker's state law claims.

**IV. CONCLUSION**

For the foregoing reasons, this Court possesses subject matter jurisdiction over Walker's 42 U.S.C. §1983 claims but lacks subject matter jurisdiction over Walker's state law claims. Mahoning County's Motion for Judgment on the Pleadings pursuant to Federal Rule of Procedure 12(c) is therefore **DENIED** in part and **GRANTED** in part. (Dkt. # 60). Walker's state law claims are hereby **DISMISSED**.

    **IT IS SO ORDERED.**

    **/s/ Peter C. Economus – September 1, 2009**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**