UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LAQUANDA WALKER,** | ) | **CASE NO. 4:07CV2812** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **V.** | ) | |
| | ) | |
| **MAHONING COUNTY,** *et al.,* | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **DEFENDANTS.** | ) | |

This matter is before the Court upon separate Motions for Summary Judgment filed by Defendants Joseph Morell and Neil Kennedy Recovery Clinic (Dkt. # 79), and by Mahoning County Operators of the Mahoning County Juvenile Justice Center ("Mahoning County") (Dkt. # 87).  Also before the Court are Plaintiff Laquanda Walker's ("Plaintiff") Responses (Dkt. # 88, 92) and the Defendants' Replies (Dkt. # 93, 94).

**I. BACKGROUND**

This case arises from the drowning death of Roosevelt Walker ("Walker"). Laquanda Walker is the administratrix of Walker's estate.  (Dkt. #55 at ¶ 6).  At the time of Walker's death, he was a 17-year-old participant in Mahoning County's Resident Substance Abuse Treatment Program ("RSAT").  (Dkt. #55 at ¶ 6).  The RSAT program was administered by the Neil Kennedy Recovery Clinic ("NKRC") for juveniles housed in the Mahoning County Juvenile Justice System ("JJC").  (Dkt. # 79-C at 10-11).

1

On September 17, 2005, an aviation field trip to Wolf Run State Park was offered to RSAT participants who were in the final phase of the program. (Dkt. # 90 at 12-14). The trip was intended to allow the juveniles to camp, hunt, and fish as a reward for progress in the program, and to learn to enjoy activities that did not include the use of drugs. (Dkt. # 79-A at ¶¶ 8, 9; 79-C at 21-22). Joseph Morell ("Morell"), a certified chemical dependency counselor assistant and an employee of NKRC, chaperoned the juveniles on the field trip. (Dkt. # 79-A at ¶¶ 1, 6). Morell had previously chaperoned juveniles on one other such trip. (Dkt. # 79-A at ¶ 7).

Aside from one juvenile, all of the witnesses agree that at no time during the trip were the participants invited or given permission to go swimming in the nearby lake. (Dkt. # 79-A at ¶¶ 9, 10, 12, 15, 16; 79-C at 22, 25, 32; 79-E at 14; 79-F at 32). In his deposition, James Armstrong, an RSAT participant, testified that participants were not permitted to go swimming and the adults informed the juveniles not to go in the water. (Dkt. # 79-C at 22, 25, 32). Johnson also recalls a "no swimming" sign located next to the water. (Dkt. # 79-C at 22). Furthermore, Johnson testified that all of the adults at the campsite emphasized that staying out of the water was a "big issue." (Dkt. # 79-C. at 32.)

However, Airik Talbott testified in his deposition that some of the participants went to Morell and requested permission to go swimming. (Dkt. # 90 at 32). Talbott contends that Morell stated, "sure, why not… I don't see a problem with it." (Dkt. # 90

2

at 32). In addition, two of the juveniles testified that they did not see a "no swimming" sign. (Dkt. # 90 at 48; 91at 59).

After setting up camp as a group, the participants were excused to explore the park. (Dkt. # 79-A at ¶ 12). After a few of the juveniles started swimming in the lake, Walker went into the water. (Dkt. # 90 at 33). When the other juveniles realized that Walker was having trouble, they started swimming toward Walker and attempted to rescue him. (Dkt. # 91 at 39-40). When alerted to the situation, Morell and the pilots sprinted to the lake, each diving in the water and attempted to rescue Walker. (Dkt. # 79-A at ¶ 13-14). However, their efforts were unsuccessful and Walker drowned.

## II. STANDARD OF REVIEW

Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. Id. at 323. Once that burden has been met, the non-moving party may not rest upon the allegations set forth in his Complaint. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Rather, he must present some significant probative evidence in support of his allegations. Id.

3

"The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250).

## III. LAW AND ANALYSIS

Plaintiff has brought 42 U.S.C. § 1983 claims against Morell, NKRC and Mahoning County. For the following reasons, Plaintiff's claims are without merit.

### A. Morell and NKRC

A claim brought pursuant to § 1983 requires a plaintiff to prove two elements: 1) a deprivation of a right secured by the Constitution or laws of the Unite States; and 2) the deprivation was caused by a person acting under the color of state law. See Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995). Plaintiff's claim must, therefore, be predicated upon a constitutional violation.

The Supreme Court has held that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or

4

property." Daniels v. Williams, 474 U.S. 327, 328 (1986).  In other words, "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required."  Davidson v. Cannon, 474 U.S. 344, 347 (1986) (citing Daniels, 474 U.S. at 328).

In the instant case, Plaintiff has not shown that the actions of the Defendants rise above mere negligence, and thus she cannot show that Walker's constitutional rights were violated.  In fact, in her Response to Defendants' motions for summary judgment, Plaintiff does not indicate what constitutional right of Walker's was violated.  Plaintiff does go as far as to assert that the Defendants acted willfully and wantonly, but this assertion is only supported by conclusory statements.

First, Plaintiff cannot show that Morell violated Walker's constitutional rights.  Plaintiff does not dispute that Walker chose to swim in the lake on his own volition.  Morell, immediately upon learning that Walker was in trouble, attempted to rescue him.  The only significant factual dispute involves whether Morell gave Walker permission to swim in the lake.  However, this factual dispute is not material because, even taking the facts in the light most favorable to Plaintiff, she at most can show only that Morell was negligent in supervising Walker and/or allowing him to go in the lake.  Walker was 17-years-old at the time of this tragic accident, and he was accompanied to the water by a group of other young men.  Even if Morell was negligent, the lack of due care alleged in this case "simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent."  Daniels, 474 U.S. at 331-333.

5

Second, Plaintiff cannot show a constitutional violation committed by NKRC. Plaintiff alleges that NKRC was negligent in supervising and training Morell, and that NKRC was responsible for the actions of Morrell under Ohio principles of *respondeat superior*. Plaintiff further alleges that NKRC's actions were willful and wanton, yet she has put forth no evidence in support of that claim. Plaintiff's allegations of negligence, even if true, do not amount to a violation of Walker's constitutional rights. Therefore, because Plaintiff has put forth no evidence demonstrating a constitutional violation in support of a § 1983 claim, other than conclusory statements, both NKRC and Morrell are entitled to summary judgment.

**B. Mahoning County**

Plaintiff also asserts a § 1983 claim against Mahoning County. Specifically, Plaintiff alleges that Mahoning County "instituted a policy which required one man to supervise and watch over juveniles in an environment and setting for which he had no training." (Dkt. # 92 at 11).

Local governments may not be sued under § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. In order to ensure that a municipality is only held liable for the constitutional violations it actually causes,

6

liability under § 1983 requires that the official policy is "the moving force" behind a constitutional violation.  Id. at 694.

Liability, therefore, is imposed only upon a government that, under color of some official policy, causes an employee to violate another's constitutional rights. International Union v. Bear Archery, 617 F.2d 157, 159 (6th Cir. 1980).  Where, as in the instant case, it has already been determined that no constitutional violation occurred, Mahoning County cannot be held liable.  Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  As there was no violation of Walker's constitutional rights, no state actor can be liable to Plaintiff under Monell.[1]  See id. at 799.  Therefore, no genuine issue of fact exists as to Mahoning County's liability, and summary judgment is appropriate.

**IV. CONCLUSION**

For the foregoing reasons, both of Defendants' Motions for Summary Judgment are **GRANTED**.  (Dkt. # 79, 87).  On September 1, 2009, the Court dismissed all of Plaintiff's state law claims.  (Dkt. # 73).  Therefore, all claims have been resolved and all remaining defendants are hereby **DISMISSED**.

---

[1] Moreover, in their Motion for Summary Judgment, Mahoning County contends that they do not operate or have control over the policies and procedures of the JJC.  O.R.C. § 2152.42 provides: "Any detention facility established under section 2152.41 of the [Ohio] Revised Code shall be under the direction of the superintendent. The superintendent shall be appointed by, and under the direction of, the judge or judges…[t]he superintendent serves at the pleasure of the juvenile court."  This Court is persuaded that Defendant Mahoning County does not control the policies of the JJC.  Plaintiff has provided no meritorious argument or facts to dispute this finding.

**IT IS SO ORDERED.**

<u>**/s/ Peter C. Economus – February 11, 2010**</u>
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**